## J. W. HARTLEY v. VICTOR COSTA.

VENDOR AND VENDEE—*Defective Title—Right of Vendor.* Where the owner of real estate sells and conveys the same by warranty deed, but at the time when the deed is executed it is discovered that the title is not perfect, and the purchaser pays only one-half of the purchase-price of the land and enters into a written contract to pay the other half when quitclaim deeds should be procured from the persons supposed to hold some outstanding title, and it is agreed that such half should not be paid until such quitclaim deeds should be procured and delivered to the purchaser, and afterward the seller dies, and for other reasons great delay is had in procuring the quitclaim deeds, but they are finally procured and tendered when about seven years have elapsed, and in the meantime the purchaser has been in the actual possession and enjoyment of the property under the aforesaid warranty deed from the seller, *held*, that the successors in interest of the seller may recover from the purchaser the remaining half of the purchase-price of the land, notwithstanding the great delay in the procuring and the tendering of the quitclaim deeds.

*Error from Shawnee Superior Court.*

THIS was an action brought in the superior court of Shawnee county, by *John W. Hartley* against *Victor Costa*, to recover $433.75, with interest alleged to be due on a certain contract, and also to foreclose a mortgage executed to secure the fulfillment of such contract. At the September term, 1886, the case was tried before the court without a jury, and the court made the following conclusions of fact and of law, and rendered the following judgment, to wit:

"CONCLUSIONS OF FACT.

"1. On and prior to the 3d of October, 1878, one Adam Towler had and claimed some interest in one hundred and seventy-three and a half acres of land situated in this county of Shawnee, and described as follows: The southwest quarter of section 30, in township 13, of range 17, which land he offered for public sale to take place on said 3d October. He caused handbills to be issued and circulated respecting such sale, so much of which as relates to the real property above mentioned is as follows: 'The undersigned will offer at public sale, at his residence in Monmouth township, Shawnee county, two miles west of Richland, and twelve miles southeast of Topeka, on Thursday, October 3, 1878, the following list of property, to the highest bidder for cash: A good stock farm well watered, consisting of $173\frac{1}{2}$ acres, 20 acres inclosed in field, good pasture, 10 acres timber, 10 acres of good corn, good stone house, two wells, stable and corn cribs, corral and feed yards. . . . A warranty deed with perfect title will be given to purchaser.—ADAM TOWLER.'

"2. At the time mentioned, October 3, 1878, the defendant, Victor Costa, attended said sale and bought the same of said Towler at and for the agreed price of $5 per acre, the parties agreeing to meet soon after at Topeka, when a deed was to be executed according to the terms of said sale, and the purchase-money paid.

"3. Four days thereafter, to wit, on 7th October, the parties met at Topeka pursuant to such agreement, and it was then ascertained that Towler's only title to said land was evidenced by a tax deed, and that one William Hartley of Waukesha county, Wisconsin, and the heirs-at-law of one Hartley Bannister, then deceased, had or were supposed to have some

interest in said real property. The parties thereupon agreed between themselves as follows: That Costa was to become the purchaser of said land; that the value of Towler's title or interest in the land was equal to one-half the amount of Costa's bid at the auction sale, to wit, $433.75; that Towler within one year should obtain and convey or cause to be conveyed to Costa said outstanding title or interest of said Hartley and the two brothers of said Bannister, and when so conveyed he was to be paid therefor the sum of $433.75; and thereupon Towler executed his warranty deed in form conveying said land to Costa, in which deed the consideration expressed was $867.50. Costa paid to Towler in hand $433.75, and at the same time he executed to Towler the note or contract sued upon in this action, which is in words as follows:

"'$433.75.        TOPEKA, KANSAS, October 7, 1878.
"'One year after date I promise to pay Adam Towler or order four hundred and thirty-three and $\frac{75}{100}$ dollars, with interest at ten per cent. per annum, value received; provided said Towler shall within said year obtain a quitclaim deed of William Hartley, of Waukesha county, Wisconsin, and a quitclaim deed of the two brothers of Hartley Bannister, said Hartley Bannister being now deceased, to the southwest quarter of section 30, town 13, range 17, east of the 6th principal meridian, in Shawnee county, Kansas; and if said deeds are not obtained, then said note not to be paid until the same are obtained and delivered to the undersigned.        VICTOR COSTA.
Attest: A. H. CASE.'

"4. On said day, October 7, 1878, Victor Costa executed his mortgage upon the land already mentioned to secure the payment of the note or contract signed by him, which note or contract is copied in full in said mortgage. Said mortgage was duly acknowledged and recorded.

"5. Costa took possession of the land under said purchase, and has been in possession and occupancy thereof ever since. Towler in his lifetime never procured the deeds mentioned in the above-mentioned note or contract dated October 7, 1878. He resided in Shawnee county all the time, and died in said county in the month of August, 1881.

"6. On the 16th of July, 1883, one James Mitchell filed his affidavit in the probate court of this county showing that said Towler had died in August, 1881, in this county of Shawnee, and prayed that an administrator be appointed to administer upon the estate of said Towler. The probate court duly appointed said Mitchell as such administrator, who thereupon duly qualified, and thereafter an inventory and appraisement of the estate of said deceased were duly made and filed, whereby

it appeared that the only estate left by said Towler was the note and mortgage mentioned and described in the foregoing third finding. And afterward, upon application duly made to said probate court said court granted an order to said administrator authorizing him to sell said note and mortgage at private sale, pursuant to which order said administrator sold and assigned said note and mortgage to John W. Hartley, the plaintiff in this action, for the sum of one hundred dollars; and thereupon as such administrator said Mitchell duly indorsed said note to the plaintiff.

"7. On the 7th of October, 1885, the plaintiff Hartley, by his agent and attorney J. W. Campbell, Esq., tendered to the defendant, Victor Costa, three deeds as follows: First, a quit-claim deed made, executed and acknowledged at Lancashire, in the county of Lancaster, England, on the 11th day of April, 1885, by John Bannister and Ellen his wife, and David Bannister and Jane his wife, as grantors, to John W. Hartley as grantee, conveying said southwest quarter of section 30, in township 13 south, of range 17 east, in Shawnee county, which deed was duly recorded in the registry of deeds in this county on the 3d of July, 1886; second, a quitclaim deed from John W. Hartley, of Waukesha county, Wisconsin, as grantor, to Victor Costa as grantee, dated 18th July, 1885, conveying the land last above described, which deed was duly acknowledged by said Hartley, and such acknowledgment duly certified July 18, 1885; third, a quitclaim deed from William Hartley and Margaret his wife, of Waukesha county, Wisconsin, as grantors, to Victor Costa as grantee, dated 18th July, 1885, conveying the land last above described, which deed was duly acknowledged, and such acknowledgment duly certified July 18, 1885; and upon such tender being made, said plaintiff by his said agent demanded of said Costa, defendant herein, the moneys, principal and interest due on said note or contract, dated October 7, 1878. The defendant thereupon refused to accept said deeds so tendered, or any of them, and refused to pay said moneys or any part thereof."

"9. John Bannister and David Bannister, mentioned in the last finding, are brothers of the Hartley Bannister, deceased, who was mentioned in said note or contract of 7th October, 1878, and his only heirs-at-law; and William Hartley, also mentioned in the last preceding finding, is the same William Hartley who is mentioned in said note or contract of 7th October, 1878.

"10. This action was commenced in this court on the 4th

January, 1886. The plaintiff's cause of action, if any he had and has, was kept alive by the commencement by him of two several actions in the district court of this county in his own name as plaintiff against the defendant herein as defendant, to foreclose the same note and mortgage for which this action was brought, which said actions respectively were dismissed without prejudice to a further action.

"11. No explanation or excuse was made or offered why said Towler did not, within the year mentioned in the note or contract, nor thereafter within his lifetime, procure the quitclaim deeds mentioned in said note or contract; nor was any explanation offered or made for the delay, after Towler's death, for the application for the appointment of an administrator of his estate."

## "CONCLUSIONS OF LAW.

"1. The instrument executed by defendant, copied in the foregoing third finding of fact, is not a mere promissory note, but is a contract or agreement on the part of the defendant Costa, to purchase certain lands from Towler at a specified price, and within a specified time.

"2. The obligation on the part of the defendant to pay the specified sum for said land was conditioned upon the performance by Towler of his part of the contract, that he would procure the two quitclaim deeds mentioned in the contract within one year from the date of such contract. In view of the fact that the year within which performance was to be made, and almost two years in addition thereto, had elapsed before Towler died, the last clause of said contract of 7th October, 1878, as no explanation of such delay being made or suggested, cannot be held or construed as an indefinite extension of the time for performance on the part of Towler or his successor in interest.

"3. The contract between Costa and Towler was not mutual. Costa could not, either within the year or subsequent thereto, have maintained an action to compel Towler to procure the deeds mentioned in the contract; nor could he have maintained such action against Towler's administrator or successor in interest.

"4. The present action of the plaintiff to foreclose the mortgage given by defendant is in the nature of an action to compel defendant to purchase the land under the contract of 7th October, 1878; and by reason of the *laches* of Towler and his successor in interest, and the great length of time in-

tervening between the making of said contract and the com-
mencement of legal proceedings thereon, this action cannot
be maintained."

"JUDGMENT.

"It is therefore by the court now here considered, ordered
and adjudged that said plaintiff take nothing by his said
petition, and that the defendant go hence without day, and
have and recover of and from the plaintiff his costs, herewith
taxed at the sum of $——, and execution is awarded there-
for."

The plaintiff below, as plaintiff in error, brings the case
to this court.

*J. W. Campbell*, and *H. C. Root*, for plaintiff in error.

*A. H. Case*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It seems to be admitted and was in effect
found by the court below, in finding number 10, that the
plaintiff's cause of action, if he ever had any, has not been
barred by any statute of limitations. The only question then
to be considered is, whether the plaintiff ever had any cause
of action. It seems to be contended that the plaintiff never
had any cause of action, and this for the reason that the con-
tract between the original parties was not mutual, and that
there was such an unreasonable delay on the part of Adam
Towler and his successors in interest, including the plaintiff,
in procuring the quitclaim deeds mentioned in the contract,
that the final procuring of such deeds and the tendering of
them to the defendant, and his refusal to then pay the amount
agreed to be paid, did not constitute any cause of action. It
seems to us that this contention is wholly untenable. Towler
sold the entire land to the defendant, and not merely a part
of it; he sold it for the sum of $867.50, and not for the
half of that sum. He executed a deed for the whole of the
land, and not for a part thereof; the deed expressed the en-
tire consideration of $867.50, and not any less sum; the deed
was a warranty deed; and, unless the title is made good to

the defendant for the whole of the land, Towler and his successors in interest might at any time be subject to an action for a breach of the covenants contained in the deed. Now, might not Towler and his successors in interest discharge themselves from this liability on the covenants of procuring the quitclaim deeds contracted for? And if they might, then may they not also recover the amount agreed to be paid when such quitclaim deeds should be procured? Towler put the defendant in the possession of the land at the time the warranty deed was executed, and the defendant has had the quiet and peaceable possession of the property ever since, under and by virtue of his contract with Towler and of the warranty deed from Towler; and yet he has paid only one-half of the consideration for the property, and the other half, which was withheld until the supposed defective title should be cured by the procuring of the quitclaim deeds, has now become due, and this action has been brought to recover the same. The written contract between Towler and the defendant which is set forth in the findings of the court below does not attempt or purport to make time of the essence of the contract. It is true that it speaks of Towler procuring the quitclaim deeds within one year, but it also states that "If said deeds are not obtained then, said note not to be paid until the same are obtained and delivered to the undersigned." This clearly shows that time was not intended to be of the essence of the contract, and it clearly shows that the procuring of the quitclaim deeds even after the year would come within the contract, and would entitle Towler or his successors in interest to recover the amount agreed to be paid when the deeds were obtained. The mere fact that that part of the contract which was reduced to writing was not in every sense mutual, cannot defeat the plaintiff's action. The written part of the contract was and is in fact only a small portion of the entire contract, the entire transaction. We have stated substantially the entire contract, except that we have not mentioned the mortgage that was given on the land to secure the payment of the bal-

ance due on the purchase-price of the land. In one sense a promissory note is not mutual, for the payor thereof could not sue the payee thereon, and yet no one has ever supposed that a promissory note is void for' that reason. And when an owner of stolen property offers to the people of the world in general a reward for the return of the property, and some person innocent of the theft hunts for the stolen property, finds it, and returns the same to the owner in accordance with the owner's offer, and then demands the reward, no person has ever yet supposed that the owner of the property could then say that the offer was void because it was not mutual, and refuse to pay the reward because the owner could not at the time he made the offer have sued the person returning the property, or any other innocent person not having the possession of the property, to compel him to return the property. This present case is a much stronger case for the plaintiff than the one supposed. There was ample consideration for the contract in the present case aside from the procuring and the tendering of the quitclaim deeds, and the con-

Valid contract; vendor may recover remainder of purchase-price.

tract was valid, which consideration we have already mentioned. And when the quitclaim deeds were procured and tendered, the plaintiff was entitled to the remainder of the purchase-price of his land. As before stated, time was not of the essence of the contract, and we do not think that Towler or his successors in interest have forfeited their rights under the contract by their delay. Much of their delay is excusable under the circumstances. Towler died, and his successors had to send to England to obtain the quitclaim deeds. Besides, forfeitures are never favored in law, and they are always odious in equity. And further, the defendant in this case never withdrew his offer or promise to pay the remaining half of the consideration for the land; nor did he at any time complain of any delay in the procuring of the quitclaim deeds. On the contrary, he held the possession of the land as given to him by Towler, the plaintiff's predecessor in interest, enjoyed the rents, profits and benefits thereof, and permitted the plaintiff and his pred-

ecessors to expend their time, labor and money in procuring the quitclaim deeds. It does not appear that he was ever ready or willing to pay the remaining half of the consideration for the land, even if the quitclaim deeds had been procured and tendered to him at an earlier day. He does not seem to have been in any hurry in having the matter closed up; and surely he has lost nothing by the delay. Certainly under the circumstances of this case he has no right to complain.

It is also claimed that the defendant is relieved from fulfilling his contract for the reason that one of the quitclaim deeds was not made directly to the defendant, but was made to John W. Hartley, and that Hartley afterward executed a quitclaim deed to the defendant. Now the contract does not say to whom the quitclaim deeds should be executed, but the substance of the contract is, however, that the defendant should receive in some manner all the title or interest in the land which was owned or claimed by William Hartley and the two brothers of Hartley Bannister. Now quitclaim deeds from the above-mentioned persons, either to Towler or to the defendant, would have accomplished that result; for under the warranty deed from Towler to the defendant all after-acquired titles or interests vesting in Towler would inure to the benefit of the defendant. Also, quitclaim deeds executed in the manner in which the quitclaim deeds in the present case were executed would accomplish the same result. The defendant has, in effect and in substance, received all that he contracted for, and he has now no reason to complain.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendant for the amount claimed, and for the foreclosure of the mortgage.

All the Justices concurring.